IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSHUA P.,[1]

        Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]

        Defendant.

Case No. 3:20-cv-00807-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

    Joshua P. ("Plaintiff") brings this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. §

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is substituted for Andrew Saul as the defendant. *See* FED. R. CIV. P. 25(d)(1).

PAGE 1 – OPINION AND ORDER

405(g), and all parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

///
///
///
///

PAGE 2 – OPINION AND ORDER

## BACKGROUND

**I.   PLAINTIFF'S APPLICATION**

Plaintiff was born in September 1986, making him thirty years old on February 27, 2017, the day he filed his application.[3] (Tr. 36, 44, 82, 98.) Plaintiff has a limited education and no past relevant work.[4] (Tr. 44, 55-56, 219.) In his application, Plaintiff alleged disability due to bipolar disorder, scoliosis, degenerative disc disease, a herniated disc, and nerve root impingement. (Tr. 82-83.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on December 19, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 36.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on April 4, 2019. (Tr. 52-80.) On April 24, 2019, the ALJ issued a written decision denying Plaintiff's application. (Tr. 36-45.) On March 26, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-7.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-2.)

**II.   THE SEQUENTIAL PROCESS**

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[3] "[T]he earliest an SSI claimant can obtain benefits is the month after which he filed his application[.]" *Schiller v. Colvin*, No. 12-771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citation omitted).

[4] During a physician's consultative examination, Plaintiff reported that he only "finished the 2nd grade in school due to his problems with writing and reading." (Tr. 840.) Plaintiff, however, reported to the ALJ and Commissioner that he dropped out of school after completing the eighth grade. (Tr. 55-56, 219.)

PAGE 3 – OPINION AND ORDER

which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

### III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 36-45.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 27, 2017, the day he filed his application. (Tr. 38.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "[D]egenerative disc disease, reading disorder, [and] bipolar disorder[.]" (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that

PAGE 4 – OPINION AND ORDER

meets or medically equals a listed impairment. (Tr. 39.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can occasionally climb ladders, ropes, and scaffolds; (2) Plaintiff can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs; (3) Plaintiff is "limited to frequent overhead and forward reaching bilaterally"; (4) Plaintiff needs to avoid "concentrated exposure to heights and hazards," as well as "dust, odors, fumes, gases and other pulmonary irritants"; (5) Plaintiff is limited to "simple, routine tasks"; and (6) Plaintiff is limited to jobs that do not require "reading or writing." (Tr. 40.) At step four, the ALJ concluded that Plaintiff had no past relevant work experience. (Tr. 44.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as a housekeeping cleaner, flagger, and usher. (Tr. 45.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to provide a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's testimony about incontinence. (Pl.'s Opening Br. at 2.) As explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record.

**I.    APPLICABLE LAW**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the

PAGE 5 – OPINION AND ORDER

claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

## II.     ANALYSIS

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 40, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. The Court concludes that the ALJ met that standard.

To avoid committing harmful error, an ALJ must provide only one clear and convincing reason, supported by substantial evidence, for discounting a claimant's symptom testimony. *See Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's opinion discounting the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [the] testimony as not

PAGE 6 – OPINION AND ORDER

credible"); *Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) ("[If the] ALJ provided at least one valid reason to discount [a claimant's symptom] testimony, error in remaining reasons is harmless[.]") (citation omitted). There is, however, one important caveat to this rule: A lack of supporting medical evidence cannot be the only valid reason provided for discounting a claimant's testimony. *See Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (noting that an "ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason" (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005))); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (stating that the ALJ "failed to provide clear and convincing reasons supported by substantial evidence to support her conclusion that [the claimant's] testimony was not entirely credible," and a "lack of objective medical evidence cannot be the sole reason to discredit claimant testimony" (citing *Burch*, 400 F.3d at 681)).

These authorities are particularly noteworthy here because Plaintiff challenges only the ALJ's reasons for discounting his testimony about incontinence (*see* Pl.'s Opening Br. at 2, 7, reflecting that Plaintiff's sole assignment of error is that the ALJ "erred in rejecting Plaintiff's testimony about incontinence without giving a clear and convincing reason supported by substantial evidence") (bold omitted), and because, as explained below, the ALJ provided other clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony.

For example, the ALJ observed that Plaintiff testified that he cannot lift a gallon of milk (*see* Tr. 40, citing Tr. 60, "Can you lift a gallon of milk? A. Not really. . . . [I]f I do it then it's going to instantly affect my back."), but his medical records demonstrated that he exhibited full strength in his upper extremities bilaterally. (Tr. 40, citing Tr. 839-44, July 6, 2017, a consulting

physician examined Plaintiff and observed that Plaintiff exhibited "5/5 [full strength] in the upper . . . extremities bilaterally," even though there was "some evidence of poor effort and inconsistencies" on exam; *see also* Tr. 847, August 22, 2017, Plaintiff's treating neurosurgeon noted that Plaintiff exhibited "5/5 [full strength in] all muscle groups [in the] upper and lower extremity"). The ALJ also observed that Plaintiff provided inconsistent testimony about when he dropped out of school: "The claimant reported to the [consulting physician] that he [only] completed 2nd grade but in his disability report he indicated he completed 8th grade[.]" (Tr. 41, citing Tr. 840, "He finished the 2nd grade in school due to his problems with writing and reading," and Tr. 219, "Check the highest grade of school complete. 8th grade[.]" (bold omitted); *see also* Tr. 55-56, "How far did you get [in school]? A. I could not read or write by June or whatever, first year of high school so I dropped out. Q. Ninth grade? A. I guess. Q. Okay. Ever get a GED? A. No."). Further, the ALJ observed that Plaintiff suggested that he "cannot walk a block" (*see* Tr. 40, referring to Tr. 59-50, "So if you and I went for a walk outside where it's flat and level and no wind, . . . how many blocks or miles do you think we'd get? A. You want to make it a block[?] Q. Okay."), but he also reported "walking as a soothing activity." (Tr. 40, citing Tr. 828, March 17, 2017, "Client expresses 'fishing, walking, and going to the lake' as soothing activities.").

      These inconsistencies are a clear and convincing reason to discount Plaintiff's testimony. *See Heinig v. Saul*, 845 F. App'x 660, 661 (9th Cir. 2021) ("[T]he ALJ reasonably concluded that the alleged severity of Heinig's symptoms was contradicted in the record. The ALJ properly considered Heinig's prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid. The ALJ noted several inconsistencies between Heinig's testimony and the evidence in the record, including the objective medical

evidence[.] . . . By detailing these inconsistencies, which are supported by substantial evidence, the ALJ provided clear and convincing reasons to discount Heinig's testimony.") (simplified). That could end the Court's analysis because the ALJ need only provide one clear and convincing reason to discount Plaintiff's testimony.

In addition, Plaintiff does not dispute the ALJ's treatment of Plaintiff's testimony about his mental health symptoms. The ALJ observed that Plaintiff "suffers from longstanding mental impairments but there is little evidence of resulting work-related limitations." (Tr. 41.) In support of this finding, the ALJ noted, *inter alia*, that Plaintiff "reported his bipolar symptoms [are] well-controlled." (Tr. 42; *see also* Tr. 98, alleging disability due in part to bipolar disorder; Tr. 376, February 9, 2017, Plaintiff's "symptoms are currently well controlled"; Tr. 1077, February 28, 2017, "Bipolar disorder with mania, currently controlled."; Tr. 1011, March 3, 2017, Plaintiff's bipolar symptoms have "been fairly well controlled"). This is also a clear and convincing reason to discount Plaintiff's testimony. *See Tidwell v. Saul*, 836 F. App'x 523, 524 (9th Cir. 2020) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony and noting that the ALJ observed that the claimant's mental impairments "[were] well controlled with medication").

Plaintiff disputes only whether the ALJ provided a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's testimony about incontinence. Although Plaintiff's sole assignment of error is harmless given the findings, evidence, and Ninth Circuit case law discussed above, the Court nevertheless addresses Plaintiff's argument.

In arguing that the ALJ committed harmful error in discounting his testimony about incontinence, Plaintiff notes that the ALJ rejected his testimony because his 2017 magnetic resonance imaging ("MRI") did not show signs of cauda equina syndrome ("CES"), an

impairment that can cause incontinence, but he argues that "the 2019 MRI did show CES." (Pl.'s Opening Br. at 8.) As the Commissioner correctly notes, Plaintiff's 2019 MRI—which the Appeals Council made part of the record—did not "mention [CES]." (Def.'s Br. at 12, citing Tr. 30.)

Rather, Plaintiff's April 3, 2019 MRI revealed the following: (1) "[i]nterval development of right intraforaminal to posterolateral disc protrusion at L4-5 with at least moderate right foraminal stenosis and possible impingement of the right L4 nerve root"; (2) "[a] mild central disc protrusion [at the L4-5] level but no spinal stenosis"; (3) "central disc protrusions at L5-S1 and to a lesser degree L3-4"; (4) no spinal stenosis at the L5-S1 or L3-4 levels; (5) "unchanged mild to moderate foraminal encroachment at L5-S1 with questionable impingement on the nerve roots in the lateral recesses"; and (6) "[d]egenerative disc disease at each level in the lumbar spine with the exception of L2-3 with progression of changes at L1-2 and L5-S1."[5] (Tr. 30.) None of these MRI impressions (or the related findings described in the MRI) refer to CES. Instead, the 2019 MRI refers only to "possible" and "questionable" nerve impingement. These findings to do not appear any more remarkable than the results of Plaintiff's 2017 MRI, which as discussed below, did not demonstrate that Plaintiff was suffering from CES.

Plaintiff also notes that after he reported a recurrence of his incontinence, Dr. Byrne "told him that its recurrence was the result of residual nerve damage in his spine." (Pl.'s Opening Br.

---

[5] The parties note that CES "most commonly results from a herniated disc in the lumbar region" (Pl.'s Opening Br. at 2 n.2), and MRIs are the best method for diagnosing CES. (Def.'s Br. at 4.) In comparison to Plaintiff's April 3, 2019 MRI, Plaintiff's August 3, 2017 MRI revealed, *inter alia*, a herniation of "questionable clinical significance" at L3-4; a "mild annulus bulge" at L4-5, with "no significant mass effect being exerted on the dural sac or on exiting L4 roots"; a "herniation of disc material [at L5-S1] that protrudes into the spinal canal," without "compression of the dural sac or of adjacent S1 nerve roots"; and "normal" nerve roots at L5. (Tr. 871-72.)

PAGE 10 – OPINION AND ORDER

at 8, citing Tr. 1156.) On March 13, 2019, several weeks before the April 2019 MRI, Dr. Byrne drafted a letter to the ALJ, which stated, *inter alia*, that Plaintiff underwent a discectomy in 2014 because "discs were compressing the right nerve root causing [CES]—a condition which impairs bladder and bowel function"; Plaintiff "continues to report urinary and bowel incontinence"; in July 2017, Dr. Byrne "noted reduced anal sphincter tone, which is consistent with fecal incontinence"; and although Plaintiff's "present imaging does not show nerve impingement, his current incontinence *may be* a residual effect of earlier nerve damage." (Tr. 1156) (emphasis added). Dr. Byrne's letter suggests only that Plaintiff's reported incontinence "may" be a residual effect of earlier nerve damage, not that it was in fact a result of such damage to the spine.

Also noteworthy is that on August 22, 2017, Plaintiff presented for a follow-up visit with his neurosurgeon, Richard Polin, M.D. ("Dr. Polin"), who observed that Plaintiff visited him "about three years and five months ago with severe right L4 radicular pain and [CES]"; he in turn "performed a minimally invasive microdiscectomy with excellent resolution of symptoms"; Plaintiff reported that he had "experienced off and on right hip pain for about a year which has been worse over the last month after being quite active while camping"; and Plaintiff reported that there had "also been some bowel [and] bladder issues although he does not have [f]rank incontinence." (Tr. 845.) Additionally, Dr. Polin observed that there was "no current perianal numbness or incontinence"; Plaintiff had "a prior [back] surgery secondary to a large disc herniation with [CES] symptoms"; Plaintiff had "a recurrence of such symptoms but his MRI scan at present is much less remarkable"; Plaintiff "has mild pathology at L3-4 greater than L5-S1 with no significant canal or nerve root compression"; he would "recommend conservative care" for Plaintiff; Plaintiff "[c]learly" needs "both weight loss and core strengthening"; he was

PAGE 11 – OPINION AND ORDER

sending Plaintiff "back to physical therapy which should be the cornerstone of his treatment"; and he "tried to reassure [Plaintiff] that there is nothing surgical on [his August 2017] MRI." (Tr. 846-47.)

Given the conflicting medical evidence described above, some of which the ALJ cited in discounting Plaintiff's complaints of incontinence (*see* Tr. 41, "[Plaintiff] was evaluated for his complaints in August 2017. MRI did not show [CES]."), and given the other specific, clear and convincing reasons that the ALJ provided for discounting Plaintiff's symptom testimony, the Court concludes that the ALJ did not commit harmful error in discounting Plaintiff's complaints of incontinence. *See Sims*, 704 F. App'x at 704 (affirming the ALJ's decision to discount the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [the] testimony as not credible"); *Gilliland*, 821 F. App'x at 799 ("[If the] ALJ provided at least one valid reason to discount [a claimant's symptom] testimony, error in remaining reasons is harmless[.]"); *see also Schmitz v. Saul*, 857 F. App'x 368, 370-71 (9th Cir. 2021) (explaining that "it is the ALJ's responsibility to determine credibility and resolve conflicts in the medical evidence," and if the ALJ's evaluation is supported by substantial evidence, i.e., more than a mere scintilla of evidence but less than a preponderance, a court "may not reweigh the evidence even if [it] would have reached a different conclusion").

///

///

///

///

///

PAGE 12 – OPINION AND ORDER

## CONCLUSION

For these reasons, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 23rd day of September, 2021.

*Stacie F. Beckerman*
_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge